UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SOTO, et al.,<br><br>               Plaintiffs,<br><br>     v.<br><br>EVO TRANSPORTATION & SERVICES,<br>INC., et al.,<br><br>               Defendants. | Case No.  24-cv-02415-TSH<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 25 |

## I.    INTRODUCTION

Pending before the Court is Plaintiffs Juan Soto and Antonio Arango's motion to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  ECF No. 25. Defendants EVO Transportation & Services, Inc. and EVO Services Group, LLC (collectively, "EVO") did not file a response.  The Court finds this matter suitable for disposition without oral argument and **VACATES** the January 16, 2025 hearing.  *See* Civ. L.R. 7-1(b).  For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.    BACKGROUND

**A.    Juan Soto**

In or about August 2019, Soto was hired as a truckdriver by Thunder Ridge Transport. First Am. Compl. ¶ 4, ECF No. 9.  EVO acquired Thunder Ridge in 2020 and was Soto's employer until his termination on May 10, 2023.  *Id.* ¶ 5.  As a truck driver, Soto made deliveries between United States Postal Service locations.  *Id.* ¶ 6.  Due to the time sensitivity of his

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 14, 24.

United States District Court
Northern District of California

deliveries, Soto usually worked overtime to complete them. *Id.* Despite his overtime, EVO consistently paid Soto a regular wage of $28.00 per hour for all his time worked. *Id.* ¶¶ 7-8. EVO also failed to provide Soto with meal breaks and rest breaks and failed to pay annual bonus payments to which he was entitled. *Id.* ¶¶ 9, 11.

Soto's employment contract entitled him, when injured or disabled, to be assigned to light duty so long as medically appropriate. *Id.* ¶ 11. At some point,[2] Soto was injured on the job and underwent surgeries, which left him unable to perform his truck driving duties. *Id.* ¶ 10. Soto was placed on medical leave and assigned to light work. *Id.* In early 2023, Soto's treating physicians released him to return to his regular truck driving duties in May 2023. *Id.* ¶ 12. However, on or about April 23, 2023, Soto was significantly injured in an off-the-job vehicular accident. *Id.* In late April 2023, Soto's physicians discovered that he was suffering from a form of cancer that required immediate treatment. *Id.* When Soto phoned an EVO representative to give notice of his accident injuries and impending cancer treatment, the representative replied, "That's going to be a problem." *Id.*

In late April 2023, EVO canceled Soto's health insurance and failed to give him notice of his option to continue the health insurance through COBRA. *Id.* ¶ 13. On or about May 10, 2023, EVO notified Soto by telephone that his employment was terminated, stating that the trucking routes he had routinely driven were no longer available. *Id.* ¶ 14. Soto asked for a letter confirming his employment termination, but the EVO representative replied that no such letter would be issued. *Id.* Soto also requested the EVO representative provide the forms and information necessary for him to revive his health insurance coverage through COBRA, but the EVO representative refused to do so, stating Soto was a part-time employee and not entitled to utilize COBRA. *Id.* Because EVO canceled Soto's health insurance, his medical treatment was significantly delayed. *Id.* ¶ 16. Before terminating Soto, EVO failed to offer him any reasonable accommodation. *Id.* ¶ 17.

---

[2] Soto does not state when he was injured.

**B.      Antonio Arango**

Sometime prior to August 2, 2020, Arango was hired as a truck driver by EVO, driving EVO's trucks between USPS locations.  *Id.* ¶¶ 19-20.  Due to the time sensitivity of his deliveries, Arango usually worked overtime to complete them.  *Id.* ¶ 20.  Despite his overtime, EVO consistently paid Arango a regular wage of $28.00 per hour for all his time worked.  *Id.* ¶¶ 21-22.  EVO also failed to provide Arango with meal breaks and rest breaks.  *Id.* ¶ 23.

On November 19, 2021, Arango sustained an on-the-job injury that prevented him from performing his truck driving duties.  *Id.* ¶ 24.  Arango has since been on medical leave.  *Id.*  For a limited portion of his time on medical leave that ended in or about June 2023, EVO assigned Arango to light duty, although his employment contract entitled him, when injured or disabled, to be assigned to light duty so long as medically appropriate.  *Id.*

On July 6, 2024, Arango informed EVO that he had substantially recovered from his injuries and was able to resume his truck driving duties, except he was unable to engage in pushing, pulling, or lifting the loads being delivered.  *Id.* ¶ 25.  EVO responded that it would not allow Arango to resume truck driving until he was 100 percent recovered, and it failed to offer him a reasonable accommodation.  *Id.*

**C.      Procedural Background**

Soto filed his initial complaint on April 23, 2024, and Soto and Arango filed the operative First Amended Complaint on August 7, 2024.  They allege nine causes of action: (1) violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (as to Soto); (2) violations of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900-96 (as to Soto); (3) wrongful discharge in violation of public policy (as to Soto); (4) breach of employment contract (as to Soto); (5) FEHA disability discrimination (as to Arango); (6) breach of employment contract (as to Arango); (7) violations of the California Labor Code (as to Soto and Arango); (8) violations of the Private Attorneys General Act, Cal. Lab. Code § 2698, et. seq. (as to Soto, Arango, and other current and former employees); and (9) a claim for "Class Action Certification" (as to Soto, Arango, and all persons similarly situated).  First Am. Compl. ¶¶ 26-81.

3

1    EVO filed its Answer on September 18, 2024.

2    On November 7, 2024, the parties filed a joint case management statement in which

3    Plaintiffs indicated they would seek leave to file a second amended complaint, and EVO requested

4    the Court not set any deadlines pending resolution of the pleadings. ECF No. 20. As such, the

5    Court vacated the scheduled case management conference and ordered Plaintiffs to file any motion

6    to amend by December 5. ECF No. 22.

7    Plaintiffs filed the present motion on December 5, 2024.

8    ### III.   LEGAL STANDARD

9    Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its original pleading

10   once as a matter of course within 21 days of serving it. "In all other cases, a party may amend its

11   pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

12   15(a)(2). The Court considers five factors in deciding a motion for leave to amend: (1) bad faith

13   on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; (4) futility of

14   amendment; and (5) whether the plaintiff has previously amended his complaint. *In re W. States*

15   *Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc.*

16   *v. Learjet, Inc.*, 575 U.S. 373 (2015). The rule is "to be applied with extreme liberality."

17   *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotations and

18   citation omitted). Generally, a court should determine whether to grant leave indulging "all

19   inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th

20   Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue

21   delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

22   by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of

23   amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th

24   Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

25   ### IV.   DISCUSSION

26   **A.    Bad Faith and Undue Delay**

27   As to the first two factors, the Court finds the proposed amendment is not sought in bad

28   faith or with a dilatory motive. As to the first, bad faith may be shown when a party seeks to

1    amend late in the litigation process with claims which were, or should have been, apparent early.

2    *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995).  Here, the case is still at the pleading stage

3    and no case management deadlines have been set.

4           As to the second, a moving party's inability to sufficiently explain its delay may indicate

5    that the delay was undue.  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).

6    Whether the moving party knew or should have known the facts and theories raised in the

7    proposed amendment at the time it filed its original pleadings is a relevant consideration in

8    assessing untimeliness.  *Id.*  There is no indication Plaintiffs delayed in seeking leave to amend.

9    Regardless, "delay alone no matter how lengthy is an insufficient ground for denial of leave to

10   amend."  *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).  Rather, undue delay

11   combined with other factors may warrant denial of leave to amend.  *See, e.g., Jackson*, 902 F.2d

12   1387-89 (holding that prejudice and undue delay are sufficient to deny leave to amend).

**B.    Prejudice to the Opposing Party**

14          "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight.

15   *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185

16   (9th Cir. 1987)).  However, "[t]o overcome Rule 15(a)'s liberal policy with respect to the

17   amendment of pleadings a showing of prejudice must be substantial."  *Stearns v. Select Comfort

18   Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010) (citing *Genentech, Inc. v. Abbott

19   Lab'ys*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989)).  As EVO did not file a response, the Court

20   finds there is no indication it will face substantial prejudice.

**C.    Futility of Amendment**

22          "A motion for leave to amend may be denied if it appears to be futile or legally

23   insufficient.  However, a proposed amendment is futile only if no set of facts can be proved under

24   the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *Miller v.

25   Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  As the Supreme Court

26   has held, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper

27   subject of relief, he ought to be afforded an opportunity to test his claim on the merits.'"  *Foman*,

28   371 U.S. at 182.  The standard to be applied is identical to that on a motion to dismiss for failure

United States District Court
Northern District of California

1    to state a claim under Rule 12(b)(6).  *Miller*, 845 F.2d at 214.

2        To satisfy the 12(b)(6) pleading standard, a plaintiff must plead his claim with sufficient

3    specificity to "give the defendant fair notice of what the claim is and the grounds upon which it

4    rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain

5    sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A

6    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

7    the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

8    556 U.S. 662, 663 (2009) (citation omitted) (quotation marks omitted).

9        Having reviewed Plaintiffs' proposed amendment, it does not appear to be futile or legally

10   insufficient.  Further, even if EVO were to argue the legal insufficiency of Plaintiffs' proposed

11   amendment, "'[t]he merits or facts of a controversy are not properly decided in a motion for leave

12   to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for

13   summary judgment.'"  *Allen v. Bayshore Mall*, 2013 WL 6441504, at *5 (N.D. Cal. Dec. 9, 2013)

14   (quoting *McClurg v. Maricopa Cty.*, 2010 WL 3885142, at *1 (D. Ariz. Sept. 30, 2010)).  Thus,

15   "'denial [of a motion for leave to amend] on this ground is rare and courts generally defer

16   consideration of challenges to the merits of a proposed amended pleading until after leave to

17   amend is granted and the amended pleading is filed.'"  *dpiX LLC v. Yieldboost Tech, Inc.*, 2015

18   WL 5158534, at *3 (N.D. Cal. Sept. 2, 2015) (quoting *Clarke v. Upton*, 703 F. Supp. 2d 1037,

19   1043 (E.D. Cal. 2010)).

20   **D.    Previous Amendments**

21       Courts have broader discretion in denying motions for leave to amend after leave to amend

22   has already been granted.  *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the

23   district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide

24   discretion in granting or refusing leave to amend after the first amendment, and only upon gross

25   abuse will its rulings be disturbed."); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir.

26   2002).  Here, the Court has not previously granted leave to amend.

27                        **V.    CONCLUSION**

28       Having considered the relevant factors, the Court **GRANTS** the motion to amend.

United States District Court
Northern District of California

6

Plaintiffs shall file the amended complaint as a separate docket entry by January 7, 2025.

**IT IS SO ORDERED.**

Dated: January 2, 2025

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California